ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/9/17

| | |
|---|---|
| COLONIAL FUNDING NETWORK, INC. as servicing provider for TVT Capital, LLC,<br><br>Plaintiff,<br><br>- against -<br><br>EPAZZ, INC., CYNERGY CORPORATION, and SHAUN PASSLEY a/k/a Shaun A. Passley,<br><br>Defendants. | 16 Civ. 5948 (LLS)<br><br>**OPINION & ORDER** |

EPAZZ, INC. and SHAUN PASSLEY,

Counterclaim Plaintiffs,

- against -

TVT CAPITAL, LLC, VANTIFF, LLC,
COLONIAL FUNDING NETWORK, INC., ANDREW
FELLUS, WARREN FELLUS, JOHN DOES 1-10,
and JANE DOES 1-10,

Counterclaim Defendants.

Plaintiff Colonial Funding Network, Inc. ("Colonial") and TVT Capital, LLC ("TVT") move to dismiss counterclaims asserted by Epazz, Inc. ("Epazz") and Shaun Passley ("Passley," and together with Epazz, "defendants") for failure to state a claim upon which relief can be granted, and to strike certain affirmative defenses as insufficient. Vantiff, LLC ("Vantiff"), Andrew Fellus, and Warren Fellus move to dismiss the counterclaims for failure to state a claim.

## BACKGROUND

Epazz is an Illinois corporation based in Chicago. Counterclaims (Dkt. No. 8) ¶ 2. Passley, an Illinois citizen, is Epazz's principal. Id. ¶ 1, 3.

TVT is a Delaware LLC based in Roslyn, New York, whose members are citizens of New York. Id. ¶¶ 4, 7-8. Colonial is a New York corporation based in New York City. Id. ¶ 6. Colonial is the plaintiff in this action as servicing provider for TVT.

Vantiff is a New York LLC based in Bethpage, New York, whose members are citizens of New York. Id. ¶¶ 5, 7-8. The counterclaims allege that Vantiff "does business as, or is the alter ego of, TVT Capital" and "as used in this pleading, the term TVT Capital includes Vantiff, LLC." Id. ¶ 5.

Andrew Fellus and Warren Fellus, both New York citizens, are co-managing members of TVT. Id. ¶¶ 7-8. Defendants allege that they "caused TVT Capital and Colonial Funding Network, Inc. to engage in, and otherwise ha[ve] engaged in or caused, the conduct averred" in the counterclaims. Id.

Epazz and TVT entered into three merchant cash advance agreements (the "Agreements") whereby Epazz sold a total of $898,500 of its future receipts (the "receipts purchased amounts") to TVT in exchange for upfront advances totaling $600,000 (the "purchase price"). Id. ¶¶ 17-19, 30, Exhs. A-C at 1. Under each Agreement Epazz has to pay 15% of its daily

receipts to TVT until the receipts purchased amount is paid in full. Id. ¶ 39, Exhs. A-C at 1. Passley personally guaranteed Epazz's performance under each of the Agreements. Id., Exhs. A-C at 4-5.

Epazz agreed to deposit all its receipts into a designated bank account from which it authorized TVT to debit specific daily amounts each business day as base payments to be credited against 15% of daily receipts. Id. ¶¶ 36-37, 39-40, Exhs. A-C at 1. The specific daily amounts are $2,439 for each of the first two Agreements and $2,915 for the third Agreement. Id. Upon reviewing Epazz's monthly bank statements, TVT is required to either credit or debit the difference between the specific daily amounts and 15% of Epazz's daily receipts. Id. ¶ 49, Exhs. A-C at 1. Epazz is responsible to provide its bank statements to TVT; if it fails to provide bank statements or if it misses a month, TVT is not required to reconcile future payments. Id.

Colonial filed suit in New York Supreme Court alleging that Epazz stopped depositing all its receipts into the designated bank account, thus preventing it from collecting the daily payments. See Notice of Removal (Dkt. No. 1).

Defendants removed the action to this court and filed an answer which asserted several affirmative defenses and counterclaims claiming that the Agreements are criminally usurious loans under New York Penal Law §§ 190.40 and 190.42

-3-

(which prohibit interest on a loan or forbearance exceeding 25%
interest per annum), or resulted from fraud. Counterclaims ¶¶
22-38, 110-129. As defendants see it, Epazz borrowed $600,000
and has to repay $898,500, which if payable within a year would
represent 49.75% interest. Defendants argue that the receipts
purchased amounts are payable in less than a year because the
specific daily amounts ensures payment in full within
approximately 61 to 180 business days (three to nine months)
resulting in an interest rate that significantly exceeds 25% per
annum. Id. ¶¶ 43-48.

The movants argue that the counterclaims should be
dismissed because the Agreements are purchases, not loans, and
therefore cannot be usurious.

### DISCUSSION

### 1. Usury and Overcharge of Interest Claims

#### a. Usury

The first two counterclaims seek to impose civil liability
(damages) on all counterclaim defendants for TVT's claimed
criminal usury. That is not allowed under New York law which
allows a corporation to assert criminal usury as a defense, but
not as a claim for affirmative relief.

In Scantek Medical Inc. v. Sabella, 582 F. Supp. 2d 472,
474 (S.D.N.Y. 2008), Judge McMahon held:

> New York's criminal usury statute prohibits a person from
> knowingly charging interest on a loan at a rate exceeding 25%

per annum. N.Y. Penal Law § 190.40. The statute does not provide for civil liability and from 1860 until 1965, corporations were prohibited by law from asserting criminal usury as a defense to claims brought in a civil action. Hammelburger v. Foursome Inn Corp., 54 N.Y.2d 580, 589, 446 N.Y.S.2d 917, 431 N.E.2d 278 (1981). In 1965, New York amended its statute to allow corporations to "interpose[] a defense of criminal usury" in civil litigation. N.Y. Gen. Obl. Law § 5-521(3). The legislature created this exception because it felt that "it would be most inappropriate to permit a usurer to recover on a loan for which he could be prosecuted." Hammelburger, 54 N.Y.2d at 590, 446 N.Y.S.2d 917, 431 N.E.2d 278 (citation omitted).

Although corporations like plaintiff can assert criminal usury as a defense, they cannot bring civil claims under the criminal statute. "The statutory exception for interest exceeding 25 percent per annum is strictly an affirmative defense to an action seeking repayment of a loan." Intima-Eighteen, Inc. v. A.H. Schreiber Co., 172 A.D.2d 456, 568 N.Y.S.2d 802, 804 (1st Dep't 1991) (citations omitted). In a New York State Supreme Court case seeking a declaratory judgment that securities offerings were void as usurious loans, the court granted defendants' motion to dismiss stating, "[I]nsofar as the complaint seeks affirmative monetary relief, plaintiff improperly attempts to use a shield created by the Legislature as a sword." Zoo Holdings, LLC v. Clinton, 11 Misc. 3d 1051(A), 814 N.Y.S.2d 893, 893 (Sup. Ct. 2006). In another New York Supreme Court Case, the court determined that the defendant corporation's counterclaim for usury was barred under New York law and that "the affirmative defense may only be asserted as an offset to plaintiffs' claims only to the extent that it is alleged that plaintiffs have engaged in criminal usury." Donenfeld v. Brilliant Techs. Corp., No. 600664/07, 20 Misc. 3d 1139(A), 2008 WL 4065889, at *1 (N.Y. Sup. Ct. July 14, 2008).

(alterations in Scantek).

Where a corporation is barred from asserting usury, so is its individual guarantor. See Schneider v. Phelps, 41 N.Y.2d 238, 242, 359 N.E.2d 1361, 1364, 391 N.Y.S.2d 568, 571 (1977); Arbuzova v. Skalet, 92 A.D.3d 816, 816, 938 N.Y.S.2d 811, 811 (2d Dep't 2012).

None of the cases defendants cite, Opp. (Dkt. No. 55) at 9, 13-14, hold otherwise. They involved individuals and unincorporated entities, not corporations.

Accordingly, the motions to dismiss the usury counterclaims are granted.

## b. Overcharge of Interest

A claim for overcharge of interest can only be based on interest overcharged on a loan. It cannot arise from a purchase.

"The rudimentary element of usury is the existence of a loan or forbearance of money." Feinberg v. Old Vestal Rd. Assocs., 157 A.D.2d 1002, 1003, 550 N.Y.S.2d 482, 483 (3d Dep't 1990), quoting In re Binghamton, 133 A.D.2d 988, 989, 521 N.Y.S.2d 140, 141 (3d Dep't 1987). "If the transaction is not a loan, 'there can be no usury, however unconscionable the contract may be.'" Seidel v. 18 E. 17th St. Owners, Inc., 79 N.Y.2d 735, 744, 598 N.E.2d 7, 11-12, 586 N.Y.S.2d 240, 244-45 (1992), quoting Orvis v. Curtiss, 157 N.Y. 657, 661, 52 N.E. 690, 691 (1899). "When determining whether a transaction constitutes a usurious loan it must be 'considered in its totality and judged by its real character, rather than by the name, color, or form which the parties have seen fit to give it.'" Abir v. Malky, Inc., 59 A.D.3d 646, 649, 873 N.Y.S.2d 350, 353 (2d Dep't 2009), quoting Ujueta v. Euro-Quest Corp., 29 A.D.3d 895, 895, 814 N.Y.S.2d 551, 552 (2d Dep't 2006). "Whether a transaction constitutes a cover for usury is a question of fact." Id., citing Ujueta, 29 A.D.3d at 895, 814 N.Y.S.2d at 552. "In order for a transaction to constitute a loan, there

must be a borrower and a lender; and it must appear that the real purpose of the transaction was, on the one side, to lend money at usurious interest reserved in some form by the contract and, on the other side, to borrow upon the usurious terms dictated by the lender." Donatelli v. Siskind, 170 A.D.2d 433, 434, 565 N.Y.S.2d 224, 226 (2d Dep't 1991), citing Orvis, 157 N.Y. at 661, 52 N.E. at 691.

"Further, there can be no usury unless the principal sum advanced is repayable absolutely." Transmedia Rest. Co. v. 33 E. 61st St. Rest. Corp., 710 N.Y.S.2d 756, 760, 184 Misc. 2d 706, 711 (Sup. Ct. 2000), citing 72 N.Y. Jur. 2d Interest and Usury § 87. "When payment or enforcement rests on a contingency, the agreement is valid though it provides for a return in excess of the legal rate of interest." Kelly, Grossman & Flanagan, LLP v. Quick Cash, Inc., 950 N.Y.S.2d 723, 35 Misc. 3d 1205(A), 2012 WL 1087341, at *6 (Sup. Ct. 2012), quoting O'Farrell v. Martin, 292 N.Y.S. 581, 584, 161 Misc. 353, 354 (City Ct. 1936). Further, "a loan is not usurious merely because there is a possibility that the lender will receive more than the legal rate of interest." Phlo Corp. v. Stevens, 00 Civ. 3619 (DC), 2001 WL 1313387, at *4 (S.D.N.Y. Oct. 25, 2001), quoting Lehman v. Roseanne Inv'rs Corp., 106 A.D.2d 617, 618, 483 N.Y.S.2d 106, 108 (2d Dep't 1984).

## Facts

In this case, the "receipts purchased amounts" are not payable absolutely. Payment depends upon a crucial contingency: the continued collection of receipts by Epazz from its customers. TVT is only entitled to recover 15% of Epazz's daily receipts, and if Epazz's sales decline or cease the receipts purchased amounts might never be paid in full. See Counterclaims, Exhs. A-C at 1. The Agreements specifically provide that "Payments made to FUNDER in respect to the full amount of the Receipts shall be conditioned upon Merchant's sale of products and services and the payment therefore by Merchant's customers in the manner provided in Section 1.1." Id. at 3, § 1.9.

Defendants' argument that the actual daily payments ensure that TVT will be paid the full receipts purchased amounts within approximately 61 to 180 business days, id. ¶¶ 33-47, is contradicted by the reconciliation provisions which provide that if the daily payments are greater than 15% of Epazz's daily receipts, TVT must credit the difference to Epazz, thus limiting Epazz's obligation to 15% of daily receipts. No allegation is made that TVT ever denied Epazz's request to reconcile the daily payments. TVT's right to collect the receipts purchased amounts from Epazz is in fact contingent on Epazz's continued collection of receipts. See Kardovich v. Pfizer, Inc., 97 F. Supp. 3d 131, 140 (E.D.N.Y. 2015), quoting Amidax Trading Grp. v. S.W.I.F.T. SCRL, 671 F.3d 140, 147 (2d Cir. 2011) ("where a conclusory

allegation in the complaint is contradicted by a document attached to the complaint, the document controls and the allegation is not accepted as true").

None of defendants' arguments, Counterclaims ¶¶ 51-109, change the fact that whether the receipts purchased amounts will be paid in full, or when they will be paid, cannot be known because payment is contingent on Epazz generating sufficient receipts from its customers; and Epazz, rather than TVT, controls whether daily payments will be reconciled.

## Law

Defendants rely on three cases for their position that these Agreements are loans as a matter of law. First, in a report and recommendation on a plaintiff's motion for a default judgment for breach of a contract whereby the defendant sold $163,726 of its receivables to the plaintiff for an upfront sum of $115,300, Magistrate Judge Freeman remarked in a footnote that "It is not entirely clear to this Court what differentiates this arrangement from a loan . . . ." Merch. Cash & Capital LLC v. Edgewood Grp., LLC, 14 Civ. 3497 (JGK) (DF), 2015 WL 4430643, at *4, n.5. (S.D.N.Y. July 2, 2015). Whether the arrangement was a loan was not briefed and was not determinative to the outcome; indeed Judge Freeman stated that "this question involves factual issues not presently before the Court," id. at *9, n.7, and held that "this Court cannot conclude, as a matter of law, that the

transaction at issue was a loan," id. at *4, n.5, citing Express

Working Capital, LLC v. Starving Students, Inc., 28 F. Supp. 3d

660, 668 (N.D. Tex. 2014). Judge Koeltl adopted Judge Freeman's

recommendation. See 2015 WL 4451057 (S.D.N.Y. July 20, 2015).

Judge Sullivan granted a plaintiff's unopposed motion for

summary judgment for breach of a contract under which plaintiff

advanced $1,084,850 in exchange for $1,317,700 of defendant's

future receipts to be paid in weekly payments of $35,000, but

reserved ruling on damages "pending a supplemental submission

from Plaintiff as to whether the Agreement — though nominally

structured as a sale of accounts receivable — in fact violates

New York's criminal usury law." Professional Merch. Advance

Capital, LLC v. C Care Servs., LLC, 13 Civ. 6562 (RJS), 2015 WL

4392081, at *4 (S.D.N.Y. July 15, 2015) ("Professional I").

After a supplemental submission was filed, Judge Sullivan ruled

in the plaintiff's favor on the usury issue stating that

> the Court is satisfied by Plaintiff's supplemental submission
> that the contract is probably not usurious. Specifically, the
> contract is structured in a manner whereby if a $35,000 weekly
> payment represent more than the weekly accounts receivable of
> Defendant C Care Services, LLC ("C Care") for a particular week,
> Plaintiff credits that difference back to C Care. . . . In light
> of the new information, the contract appears to be structured
> not as a loan but as a sale of accounts receivable.

Professional Merch. Advance Capital, LLC, 13 Civ. 6562 (RJS),

Slip Order at *1-2, ECF Dkt. No. 74 (S.D.N.Y. Aug. 3, 2015)

("Professional II"); see Siegelaub Decl. (Dkt. No. 43), Exh. 6.

Neither Judge Sullivan nor Judge Freeman held the

agreements before them to be usurious loans; they merely raised an un-briefed question, with dicta supporting the result in this case.

In Clever Ideas, Inc. v. 999 Rest. Corp., No. 602302/06, 2007 N.Y. Slip Op. 33496(U), 2007 N.Y. Misc. LEXIS 9248 (Sup. Ct. Oct. 12, 2007), a suit for breach of a contract for purchase of future credit card receipts, plaintiff moved to dismiss the defendant's usury defense. The court's description of the contract's terms included neither a reconciliation provision, nor payment contingent on the amount of receipts generated. Id. It found "there are no reasonable means of non-payment, and accordingly no risk of non-payment" and denied the motion, holding that "The transactions at issue here are clearly payable absolutely, and thus loans." Id. at *5-6.[1] In important respects the clear facts differ from those in this case.

This case is closer to Platinum Rapid Funding Group Ltd. v. VIP Limousine Services, Inc., No. 604163-15, 2016 N.Y. Slip Op. 32226(U), 2016 N.Y. Misc. LEXIS 4131 (Sup. Ct. Oct. 27, 2016), where the court dismissed defendant's usury defense and granted summary judgment to plaintiff on its breach of contact claim,

---

[1] Following discovery, the court denied the defendant's motion for summary judgment on the grounds of usury, holding that "The court will not assume that the parties entered into an unlawful agreement, and when the terms of the agreement are in issue, and the evidence is conflicting, the lender is entitled to a presumption that he did not make a loan at a usurious rate." Clever Ideas, Inc., No. 602302/06, 2009 N.Y. Slip Op. 30284(U), 2009 N.Y. Misc. LEXIS 3994, at *3 (Sup. Ct. Jan. 29, 2009) ("Clever II").

differentiating <u>Clever</u> "in two material respects," <u>id.</u> at *8,

that also apply to this case. First, <u>id.</u> at *8-9,

> The Court there stated that obligation to make payment was
> unconditional, but these are not the terms of the Merchant
> Agreements in the instant case. The only source of payment is
> deposited receipts from future transactions. Plaintiff assumes
> the risk that there will be no receipts, and therefore no
> payment. The personal guaranty is no broader than the obligations
> under the Agreement, and the requirement of payment by the
> Guarantor is no greater than that of the Merchant.

> Secondly, this Court does not take the position that the
> intention of the Funder is relevant to an interpretation of an
> Agreement which is unambiguous on its face. Since the Agreement
> specifically provides that it involves the purchase of accounts
> receivable, and is not a loan, and does not
> require unconditional repayment by the Merchant or the
> Guarantor, it is not a loan, and thereby not governed by the
> General Obligations or Banking Law as they relate to usury.

Similarly, in <u>Merchant Cash & Capital, LLC v. Transfer</u>

<u>International Inc.</u>, No. 605136/16, 2016 N.Y. Slip Op. 32395(U),

2016 N.Y. Misc. LEXIS 4515 (Sup. Ct. Nov. 2, 2016) the defendant

sold $115,200 of its future sales proceeds and receivables to

plaintiff to be paid in daily payments representing 13% of its

daily revenue in exchange for an upfront payment by plaintiff of

$80,000. <u>Id.</u> at *1. The agreements provided for initial daily

payments of $609, which "could be adjusted downward in the event

that the average daily receipts were less than anticipated, and

adjusted upward in the event that the average daily receipts

were greater than anticipated." <u>Id.</u> at *3, 7. The defendant

argued that this was a usurious loan because the plaintiff was

guaranteed to get the full amount within approximately nine

months since "the provision for adjustment was unenforceable

because there was no time limit for MCC to respond to defendants' request for adjustment." Id. at *4. The court dismissed defendant's usury defense, holding that the agreement was not a loan because "plaintiff assumed the risk that, if the receipts were less than anticipated, the period of repayment would be correspondingly longer, and the investment would yield a correspondingly lower annual return." Id. at *7-8.[2]

*  *  *

Accordingly, the motions to dismiss the counterclaim for overcharge of interest and to strike the affirmative defense of usury are granted.

## 2. Fraudulent Inducement

Defendants claim that if the Agreements are not usurious loans, then they were procured by fraud. They allege that TVT and Andrew Fellus several times referred to merchant cash advance Agreements as loans, that in reliance on those statements defendants believed that the Agreements would be loans, that defendants would not have entered into the Agreements knowing they were purchases, and that defendants were harmed as a result by incurring the costs of the Agreements. Counterclaims ¶¶ 119-129, 167.

---

[2] Although MCC bore the risk of bankruptcy, 2016 N.Y. Misc. LEXIS 4515, at *5, and here bankruptcy is an event of default, Counterclaims ¶ 64, Exhs. A-C at 3, § 3.1, TVT bears the risk that sales will decline or cease, because failure to generate receipts is not an event of default, see id.

"The elements of a fraud cause of action consist of 'a misrepresentation or a material omission of fact which was false and known to be false by the defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury.'" Pasternack v. Lab. Corp. of Am. Holdings, 27 N.Y.3d 817, 827, 59 N.E.3d 485, 491, 37 N.Y.S.3d 750, 756 (2016), quoting Mandarin Trading Ltd. v. Wildenstein, 16 N.Y.3d 173, 178, 944 N.E.2d 1104, 1108, 919 N.Y.S.2d 465, 469 (2011).

Defendants do not claim that they were misled with regard to the amount of their payment obligation, only that they were misled into believing that their payment obligation would be absolute when it actually is contingent. Their injury from that is unclear.[3]

Justifiable reliance on those statements is dispelled by the heading on the first page of each Agreement, signed by defendants, which states "Purchase and Sale of Future Receivables," and is followed by "Merchant hereby sells, assigns and transfers to Funder . . . all of Merchant's future receipts . . . until such time as the 'Receipts Purchased Amount' has been delivered by Merchant to Funder." Counterclaims, Exhs. A-C

---

[3] Defendants are only harmed by this if their intent was to accept the advances and then renege on their obligation to deliver the purchased receipts claiming usury.

at 1.[4] "Under New York law, reasonable reliance is precluded when 'an express provision in a written contract contradicts a prior alleged oral representation in a meaningful fashion.'" Republic Nat'l Bank v. Hales, 75 F. Supp. 2d 300, 315 (S.D.N.Y. 1999), quoting Villa Marin Chevrolet v. Gen. Motors Corp., 98 Civ. 6167 (JG), 1999 WL 1052494, at *5 (E.D.N.Y. Nov. 18, 1999); Stone v. Schulz, 231 A.D.2d 707, 707-08, 647 N.Y.S.2d 822, 823 (2d Dep't 1996) ("Where, as here, there is a 'meaningful' conflict between an express provision in a written contract and a prior alleged oral representation . . . plaintiff will be unable to establish that he reasonably relied on the alleged oral representations").[5]

The motions to dismiss the eighth counterclaim, for fraudulent inducement, are granted.

### 3. Rescission

To the extent that defendants seek rescission based on fraud, this counterclaim must be dismissed for the same reason as the fraudulent inducement counterclaim: no injury to defendants from the misstatements is apparent, and the unambiguously clear language in the Agreements that they are

---

[4] Defendants' argument that "Each merchant cash advance agreement refers to itself as a 'Factoring' Agreement," and "Factoring refers generally to loans made against a company's accounts receivable," Counterclaims ¶¶ 13, 77, 86, is not persuasive. Black's Law Dictionary defines "Factor" as "Someone who buys accounts receivable at a discount." Black's Law Dictionary (10th ed. 2014).

[5] The written "Loan Application," Counterclaims ¶¶ 119-121, was an application by Eppaz to TVT. The Agreements, prepared by TVT and signed by Epazz, describe only purchases.

purchases preclude justifiable reliance on prior statements that referred to loans. Materiality and justifiable reliance are required for rescission based on fraud. See Allen v. Westpoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991) ("The elements of a claim for rescission based on fraud are misrepresentation, concealment or nondisclosure of a material fact; an intent to deceive; and an injury resulting from justifiable reliance by the aggrieved party.").

To the extent defendants seek rescission because of unilateral mistake, rescission is not available where, like here, the transaction cannot be undone without prejudicing the other party. "[A] court sitting in equity can rescind a contract for unilateral mistake if failure to rescind would unjustly enrich one party at the other's expense, and the parties can be returned to the status quo ante without prejudice." Gessin Elec. Contrs., Inc. v. 95 Wall Assocs., LLC, 74 A.D.3d 516, 520, 903 N.Y.S.2d 26, 29 (1st Dep't 2010); Dahari v. Libov, 929 N.Y.S.2d 199, 31 Misc. 3d 1207(A), 2011 WL 1331913, at *3 (Civ. Ct. 2011) ("The Court may also rescind a contract based on unilateral mistake, but only when there is no prejudice to the other party and the parties can be returned to status quo.").

Additionally, rescission for unilateral mistake is not available because Epazz's mistake is due to its own careless reading of the Agreements it signed. Rescission for unilateral

mistake is available only if "the mistake is material and made despite the exercise of ordinary care by the party in error." NCR Corp. v. Lemelson Med., Educ. & Research Found., 99 Civ. 3017 (SHS) (KNF), 2001 WL 1911024, at *7 (S.D.N.Y. Apr. 2, 2001), quoting William E. McClain Realty, Inc. v. Rivers, 144 A.D.2d 216, 218, 534 N.Y.S.2d 530, 531 (3rd Dep't 1988). "[R]escission of a contract is not appropriate where a unilateral mistake is the product of negligence." Id., citing Bailey Ford, Inc. v. Bailey, 55 A.D.2d 729, 730, 389 N.Y.S.2d 181, 183 (3rd Dep't 1976).

Furthermore, "New York law does not permit reformation or rescission of a contract for unilateral mistake alone. A unilateral mistake must be 'coupled with some fraud.'" De Sole v. Knoedler Gallery, LLC, 137 F. Supp. 3d 387, 429 (S.D.N.Y. 2015), quoting Allen, 945 F.2d at 44. Because defendants cannot establish fraud, the motion to dismiss the seventh counterclaim for rescission must be granted.

### 4. Unconscionability

"Under New York law, unconscionability is an affirmative defense to the enforcement of a contract." Ng v. HSBC Mortg. Corp., 07 Civ. 5434 (RRM), 2011 WL 3511296, at *8 (E.D.N.Y. Aug. 10, 2011). Defendants have raised unconscionability as a defense to Colonial's complaint, but they also assert it as a counterclaims against TVT. "A cause of action for

unconscionability may not be used to seek affirmative relief."
Id., citing Galvin v. First Nat'l Monetary Corp., 624 F. Supp.
154, 158 (E.D.N.Y. 1985) ("the doctrine of unconscionability is
in the nature of an affirmative defense, and does not give rise
to a cause of action"); see Knox v. Countrywide Bank, 4 F. Supp.
3d 499, 513 (E.D.N.Y. 2014) ("to the extent that the complaint
alleges causes of action based on . . . unconscionability, those
claims are dismissed"); Fortune Limousine Serv., Inc. v. Nextel
Commc'ns, 35 A.D.3d 350, 354, 826 N.Y.S.2d 392, 396 (2d Dep't
2006) ("The third cause of action seeking affirmative relief on
the ground of unconscionable contract terms must also be
dismissed as '[t]he doctrine of unconscionability is to be used
as a shield, not a sword, and may not be used as a basis for
affirmative recovery.'").

Accordingly, while defendants' unconscionability defense
may survive, their ninth counterclaim made on the same grounds
is dismissed.

### 5. Prima Facie Tort

In the event that the Agreements are found not to be
usurious and not procured by fraud, defendants seek alternative
relief for prima facie tort. Defendants claim that "The genesis
of the 'merchant cash advance agreements' exclusively was the
malevolent and malicious purpose of acquiring usurious gains,
despite public policy against such conduct," and "The

counterclaim plaintiffs were damaged" as a result. Counterclaims ¶¶ 169-171. But a prima facie tort claim will be defeated where the conduct complained of is motivated by economic self-interest.

> Under New York Law, there are four elements required to support a claim for prima facie tort: (1) intentional infliction of harm, (2) causing special damages, (3) without excuse or justification, and (4) by an act or series of acts that would otherwise be lawful. Ross v. Mitsui Fudosan, Inc., 2 F. Supp. 2d 522, 531 (S.D.N.Y. 1998) (citing Curiano v. Suozzi, 63 N.Y.2d 113, 480 N.Y.S.2d 466, 469, 469 N.E.2d 1324 (1984)). "The first element requires 'disinterested malevolence,' which means that 'the plaintiff cannot recover unless the defendant's conduct was not only harmful, but done with the sole intent to harm.'" Hall [v. City of White Plains], 185 F. Supp. 2d [293] at 304 [S.D.N.Y. 2002] (quoting Twin Labs., Inc. v. Weider Health & Fitness, 900 F.2d 566, 571 (2d Cir. 1990)). Accordingly, "motives other than disinterested malevolence, 'such as profit, self-interest, or business advantage' will defeat a prima facie tort claim." Twin Labs., 900 F.2d at 571 (internal citations omitted).

Restis v. Am. Coal. Against Nuclear Iran, Inc., 53 F. Supp. 3d 705, 730 (S.D.N.Y. 2014). See AREP Fifty-Seventh, LLC v. PMGP Assocs., L.P., 115 A.D.3d 402, 403, 981 N.Y.S.2d 406, 408 (1st Dep't 2014) (dismissing prima facie tort claim where the conduct was motivated by a desire to undermine a business competitor).

The motions to dismiss the tenth counterclaim are granted.

**6. Breach of the Covenant of Good Faith and Fair Dealing**

Defendants allege that, Counterclaims ¶ 172:

> Alternatively, TVT Capital breached the covenant of good faith and fair dealing by, through conduct averred above, engineering forfeiture of the right to account reconciliation and otherwise preventing the counterclaim plaintiffs from availing themselves of the very contract provisions that TVT Capital likely asserts make the agreements something other than a loan.

Defendants argue that this claim is well pleaded "because the counterclaims aver that TVT Capital in practice regularly

-19-

does not honor account reconciliation requests, and seeks to trigger forfeiture of account reconciliation and other things to lock-in a fixed payment obligation, those things violate the covenant of good faith and fair dealing." Opp. at 53. However, beyond those broad assertions, the counterclaims are devoid of allegations that TVT ever denied Epazz's requests for account reconciliation, or that TVT did anything to trigger forfeiture by Epazz of account reconciliation.[6]

The motion to dismiss the eleventh counterclaim is granted.

## 7. Civil RICO Claims

Epazz and Passley profess to be victims of racketeering by a criminal organization (counterclaim defendants and their affiliates). This racketeering injury was inflicted by some references, written and oral, to the Agreements as "loans." These, and other circumstances, deceived Epazz and Passley into taking the Agreements as being loans, and entering into them, to their disadvantage.

But every misdescription, even if advantageous to its author, is not fraud. The purpose and economic effect of the Agreements are in major respects congruent with loans, and with small adjustments in their terms, they would be loans. The differences in terms are significant (for instance, they affect

---

[6] To the extent defendants seek to vindicate the rights of other merchants, they do not show standing to do so.

whether the obligation to repay is contingent or absolute), but not so striking that a mischaracterization of them justifies epithets of criminality. Grouping both loans and these purchases of future income as "loans" is overbroad and inaccurate, but it is not a crime.

That is illustrated by this case itself, where Epazz and Passley devote their primary emphasis to their argument that the very Agreements in this case are indeed loans (e.g., pp. 16 to 37 of their brief). The "loan" or "purchase" distinction has already produced a small body of litigation whose results in particular cases are not known until the court has ruled.

That process is not helped by extravagant invocation of laws prohibiting racketeering by organized crime, and the counterclaims asserted under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962, are dismissed.

## 8. Motion to Strike Affirmative Defenses

Colonial also moves to strike most of the affirmative defenses on the ground that they are contradicted by the counterclaims' exhibits.

> Rule 12(f) of the Federal Rules of Civil Procedure provides that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f); see Emmpresa Cubana Del Tabaco v. Culbro Corp., 213 F.R.D. 151, 155 (S.D.N.Y. 2003). But courts "should not tamper with the pleadings unless there is a strong reason for so doing." Lipsky v. Commonwealth United Corp., 551 F. 2d 887, 893 (2d Cir. 1976). Motions to strike affirmative defenses are thus "generally disfavored," Emmpresa Cubana Del Tabaco, 213 F.R.D. at 155 (internal quotation marks and citations omitted), and should be denied "unless it is clear that the allegations

in question can have no possible bearing on the subject matter of the litigation," Quanta Specialty Lines Ins. Co. v. Investors Capital Corp., No. 06 Civ. 4624 (PKL), 2008 WL 1910503, at *4 (S.D.N.Y. Apr. 30, 2008).

Burck v. Mars, Inc., 571 F. Supp. 2d 446, 456 (S.D.N.Y. 2008).

"In order to strike a defense as 'insufficient,' not only must there be no questions of law or fact that might allow the defense to succeed, but the plaintiff must also show that it would be prejudiced by the inclusion of the defense." Tradewinds Airlines, Inc. v. Soros, 08 Civ. 5901 (JFK), 2013 WL 6669422, at *2 (S.D.N.Y. Dec. 17, 2013). "The burden of additional discovery and increasing the duration and expense of litigation can constitute sufficient prejudice." Id.

The motion to strike the first defense of criminal usury and the thirteenth defense that TVT lent money without a license as required by New York's Licensed Lender Law, N.Y. Banking Law § 340 et seq., is granted because, as discussed above, the Agreements are purchases and not loans.

The motion to strike the fourteenth defense for estoppel is granted for the same reason. The Agreements are not loans because Epazz's payment obligation is contingent. There could be no detrimental reliance by Epazz on statements that indicated that payment would be required absolutely.

The motion to strike the seventh defense of failure to mitigate damages is granted because it is premised on the notion that plaintiff had a duty to collect the entire receipts

purchased amounts when the Agreements were entered into, see
Counterclaims ¶¶ 74, 79-80, 93, 95, a premise contradicted by
the Agreements' terms which require collection of the receipts
purchased amounts over time in the form of daily withdrawals
from Epazz's bank account.

The motion to strike the ninth defense of fraud, the tenth
defense seeking rescission because of fraud, and the eleventh
defense seeking rescission because of unilateral mistake are
granted for the reasons discussed above, because the Agreements'
clear language preclude defendants' justifiable reliance on
prior statements that referred to loans.

The motion to strike the second defense that "The plaintiff
lacks standing because it is not a party to the agreements
allegedly breached" is denied. While the Agreements authorize
Colonial to act as servicing agent for TVT, that alone does not
necessarily suffice to confer to it standing to sue for TVT's
injury. See generally Sprint Commc'ns Co., L.P. v. APCC Servs.,
554 U.S. 269, 128 S. Ct. 2531 (2008); Cortlandt St. Recovery
Corp. v. Hellas Telecomms., 790 F.3d 411 (2d Cir. 2015);
CWCapital Asset Mgmt., LLC v. Chi. Props., LLC, 610 F.3d 497
(7th Cir. 2010).

The motion to strike the eighth defense that "Defendants
are not liable for any conduct for which attorneys' fees should
be awarded" is denied. While the Agreements provide for recovery

of attorneys' fees in the event of defendants' breach, defendants deny that TVT disbursed the full purchase price amounts and argue that that excuses them from performance.

The motion to strike the twelfth defense of unconscionability is denied because unconscionability involves considerations beyond the contract terms. See, e.g., In re BH Sutton Mezz LLC, No. AP 16-1187 (SHL), 2016 WL 8352445, at *11 (Bankr. S.D.N.Y. Dec. 1, 2016) ("The doctrine of unconscionability seeks to prevent sophisticated parties with grossly unequal bargaining power from taking advantage of less sophisticated parties.").

Colonial may renew its motion to strike these defenses if it can meet the "stringent three-pronged test" that "(1) there must be no question of fact that might allow the defense to succeed; (2) there must be no substantial question of law that might allow the defense to succeed; and (3) the plaintiff must be prejudiced by the inclusion of the defense." City of N.Y. v. FedEx Ground Package Sys., 314 F.R.D. 348, 355 (S.D.N.Y. 2016).

## CONCLUSION

The motion by Colonial and TVT to dismiss the counterclaims for failure to state a claim and to strike certain affirmative defenses (Dkt. No. 39) is granted in part and denied in part. The motion to dismiss the counterclaims is granted. The motion to strike the first, seventh, ninth, tenth, eleventh,

thirteenth, and fourteenth affirmative defenses is granted. The motion to strike the second, eighth, and twelfth defense is denied.

The motion by Vantiff, Andrew Fellus, and Warren Fellus to dismiss the counterclaims for failure to state a claim (Dkt. No. 61) is granted.

So ordered.

Dated:    New York, New York
          May 9 , 2017

                              _Louis L. Stanton_
                              LOUIS L. STANTON
                                 U.S.D.J.